Before we get started, we at the Federal Circuit would like to welcome Judge John Murphy from the Eastern District of Pennsylvania, who is sitting by designation with our court in today's cases. So welcome, Judge Murphy. All right, our first case for argument is 23-1270, 3G Licensing v. Honeywell. Tell me how to say your name, Counsel. Good morning, Your Honors. My name is Nadea Louizidis. Say it again. Nadea Louizidis. Louizidis. Okay, got it. It's a very difficult name to pronounce. I'm getting it. Go ahead. All right. May it please the Court. Nadea Louizidis, an associate at Dublin Law Firm, LLC, for the Appellant's 3G Licensing, S.A. I would like to reserve three minutes for rebuttal. So the issue before the Court today is a narrow one, and it concerns the Board's erroneous claim construction of the limitations in the challenged method and system claims. But it is a crucial one because the Board's erroneous claim construction contaminated its other findings, which ultimately resulted in invalidation of early challenge claims. Because of this, the Board— Did the patent owner put on any kind of challenge for limitation 1B? I saw that below at the IPR, there was a lot of argument from the patent owner about limitation 1C, but nothing about limitation 1B. Is that correct? So, Your Honor, our challenge was to the claim construction of the Board, and element 1B and 1C are both— Well, let me be a little more specific. Let me try one more time. When I read your patent owner response, your preliminary patent owner response, your SIR reply, it was all devoted to limitation 1C. Is that fair to say? I didn't see anything about limitation 1B. And so, therefore, the Board's institution decision and the Board's final written decision both expressly point out that the patent owner made no argument about limitation 1B. So, was that an incorrect statement by the Board? So, Your Honor, elements of 1B and 1C are critically interlinked, so— Well, I know you're saying that now. What I'm trying to figure out is what you said to the Board at the IPR level. My understanding is that the IPR level, you were exclusively devoted to limitation 1C and said nothing about limitation 1B. I mean, if you can find something in your patent owner response with a heading related to limitation 1B or a particular discussion of limitation 1B and why our reference TS 45.008 does not disclose limitation 1B, I'd be happy to read it right now. But I didn't see it when I went through the JA. Okay. So, what I fear from your side is that you've truly forfeited slash waived any argument related to limitation 1B. And so, this appeal, the scope of it can't really go beyond limitation 1C. So, Your Honor, as I explained earlier, we focused on the algorithm in claim one, and elements 1B and 1C are critically interlinked. It is true that our argument below focused on element 1C, but the same argument applies to element 1B, so I don't How would the Board have known that if you never said anything about that to the Board? What I have to do here is put myself in the shoes of the Patent Board and try to imagine what issues are they responsible for answering? What issues have been raised by the parties? What are they on notice of that they've got to answer? And I think when I read it, I read it the same, read your papers below, I read them the same way that the Board apparently did, which is to say, quote, Patent Owner does not argue that TS 45.008 does not teach or suggest the subject matter of this limitation, i.e. limitation 1B. So, the petition focused for element 1B, as you correctly pointed out, on TS 45.008, and we addressed that reference as well. Let me point you to appendix, page 5762, paragraph 97. That's our expert's declaration. That's the first one. Yeah, but you don't really expect the Patent Board to read through your expert declaration completely if there are things in there that are not contained in your SIR reply, or your Patent Owner response, or your preliminary Patent Owner response. I mean, those are really the crux of where you make your arguments, of where you tell the Board, please consider these arguments. Right, Your Honor. So, on appendix pages 382 and 383, we address specifically what TS 45.008 discloses and doesn't disclose. Yeah, aren't these limitations? It's talking about limitation 1C, is it not? The not considering said cell or said second rat as a candidate for a reselection of said cell of the second rat is not suitable for camping. That's limitation 1C. Am I correct? Yes, Your Honor. Counsel, can I get you to move on if you don't mind? I mean, because to the suitability to the actual claim construction, I mean, I think that we understand, you know, the 1B, 1C point at this. Would you mind addressing your arguments on the suitable for camping claim construction? Sure, Your Honor. So... May I follow up to that? So, with respect to that claim construction, I just want to make sure that I understand what you're asking for. I think you're asking for a narrower claim construction that requires the UE to consider suitability using all the criteria that are listed on appendix 2520 and not just whether it's barred or not. Is that what you're going for? So, appendix 2520, that's a page from the specification TS 25304. I understand. And that lists only barred and restricted cells as arguably not suitable. So, our algorithm goes much further than that. Our algorithm requires at element 1B, where you select a suitable cell to screen out all types of unsuitability, not just barred cells and not just barred cells. And not just reserved cells. Okay, that's what I thought. So, then my follow-up question is, what is the claim construction that you are proposing? So, what claim term would you have us construe and what would you have it mean? All right. So, at element 1B, the claim recites determining if the cell is suitable for camping. So, suitable for camping, it means a cell suitable for normal use only. That's the definition of suitable for camping. This is supported by the language of the claim, the specification, including the purpose of the patent and our expert testimony. So, it means that you screen out all types of unsuitability, not just barred cells. So, you screen out acceptable cells, barred cells, reserved cells, cells for which synchronization cannot be achieved, cells for which system information cannot be decoded, and any other cells, for example, cells that belong to a different network. And then, at step 1C, you do not consider those unsuitable cells that you screened out as candidates for reselection. Okay. Does that answer your question, Your Honor? It helps. Thank you.  Where in the specification does the specification call for suitable, assuming that your new construction raised for the first time on appeal for limitation 1B for the term suitable is actually preserved? Where in the specification does it say all these things defining the term suitable? About acceptability and whatnot that you were saying? I mean, to me, it looks more like you're trying to define your claim based on what TS 25.304 says, not based on what your own specification says. So, I would refer, Your Honor, to appendix page 43 at the very bottom. Column 6, line 66, where it explains that, however, if the cell is unsuitable because it is barred for any reason, and then it gives you examples, then it is not, it is barred as a candidate for reselection for the time T barred. So, as you can see, elements 1B and 1C are, going back to my previous point, they are intertwined. 1B is written in the affirmative, and then 1C is its corollary written in the negative. So, suitable and unsuitable, the whole universe of cells under our patent is divided into suitable and unsuitable. And suitable is only the cells that are used for normal use, whereas the cell can obtain service for normal use. Why does 45.008 not teach limitation 1B? So, obviously, your appeal must be premised on 45.008 not disclosing that limitation and the Board's finding to the contrary lacks substantial evidence. I'm just wondering, did you argue in your briefing 45.008 does not teach? It's unreasonable to say that that reference teaches the 1B limitation? It is unreasonable, Your Honor, because, let me refer you to Appendix 2425, and you can see in Section 665 the algorithm for reselection, and that specification teaches that you choose the six strongest cells. So, that specification actually discloses a method that our patent expressly criticizes when it talks about then-current 3GPP specifications that choose cells for reselection based on the strength of the signal, regardless of whether the reselection can ultimately take place. Did you say any of this in your blue brief? I believe you did, Your Honor, but I would like to get back to you on that 1B bottle. I will try to find the specific page. May I squeeze in one more question quickly? What about in 25.304? There's a disclosure that's referenced throughout the argument. It's on Appendix 2534. It's right in the middle of the page vertically. It says, if the UE is camping on another cell, the UE shall exclude the barred cell from the neighboring cell list until the expiry of a time-interval T barred. Does the claim not read right on that? So, Your Honor, it does say that on that page, but it does not disclose the same algorithm. So, our Claim 1 says you first screen out all of the unsuitable cells, right, at element 1B. And you need to put in a lot of other stuff into what is unsuitable. You need the claim to require checking a lot more boxes. That's the claim construction you need. I'm still trying to understand that. So, the claim construction is, the starting point is suitability. So, element 1B checks for suitability. If you check for suitability to see if that cell is suitable for normal use, then you screen out everything that is unsuitable. So, for the various criteria of suitability that you want in there. So, yes. And, Your Honor, if you look at the Board's opinion, for example, on Appendix 1819, it is clear that the Board, when it looked at Claim 1, implied that there is some conditionality built in there. So, it's like it checks for barred, or acceptable, etc. Our position is that it checks for all of those. Barred, and reserved, and acceptable, and all the other reasons why it is unsuitable. Got it. I don't want to, I won't even be able to save some time. Sorry. But I understood your answer. Okay. Okay. Thank you. Counsel, we'll save the rest of your time for rebuttal. I'm sorry? I said, thank you. We'll save your remaining time for rebuttal. Thank you. Mr. Halverson. Good morning, Your Honor. Eric Halverson from K&L Gates, LLP, on behalf of Applebees. May I please report? 3G licensing's entire appeal is predicated on an incorrect application of claim language that's not present in any claim of the 383 patent. No claim in the 383 patent uses the word, any. No claim in the 383 patent requires testing all surrounding cells. No claim in the 383 patent requires testing for all reasons of unsuitability. However, and I want to direct your attention to Claim 5 of the 383 patent. Which specifically clarifies that the barred cell, or excuse me, that the cell that is unsuitable for camping is a barred cell. My colleague was up here suggesting that Claim 1 should be narrowed to specifically require testing for all forms of unsuitability. And that's plainly inconsistent with the language of Claim 5. Well, there's barred and there's barred, right? There's barred determined by the network and barred determined by the UE. Yes, Your Honor. The claim you're pointing to could be consistent with appellant's argument, right? Depending on which barred it is. Depending on which barred it is, but it's not that specific. And so the plain language of that claim as it relates to Claim 1 suggests the other interpretation, we believe. Could you help me understand your understanding of the nature of the appeal? Is the key issue in the appeal whether the claim ought to be interpreted narrowly to require the UE to sift through, to actually check the different types of acceptability? Is that the nature of the appeal? It's not entirely clear what the nature of the appeal is. I agree with the questions that came out on the opening argument. I didn't mean to imply it was ambiguous. I'm just asking. But we think that what the appellants are trying to argue is that the claimed determination of suitability does require going through a multitude of different steps to test for a number of different types of suitability. And do you understand that to be relevant to limitation 1B or 1C? That would be relevant to 1B, Your Honor. Couldn't it be relevant to 1C in the interpretation of the claim term sell? I'm not sure I understand that. What do you mean by that, Your Honor? Well, that's fine. That's all I got. Okay. Counsel, where in your brief did you make the argument? You haven't certainly raised it so far, an oral argument. Where in your brief did you make this argument that the appellant's arguments with regard to suitability under 1B are waived separate and apart and distinct from 1C? I don't believe we raised that point independently in our briefing, Your Honor. Do you agree with me that the law permits waiver of waiver? Meaning for a court to determine something was waived, the party has to actually argue it was waived. And otherwise, it is entirely possible under, by the way, all existing law that a party can waive the waiver argument. Your Honor, I'm not sure if a party can waive the waiver argument. You're not sure because you didn't raise this argument, correct? Correct, Your Honor. Okay. Thank you. Go ahead. And so I thought you did argue waiver, though, of claim construction. We argued waiver of claim construction, correct, Your Honor. We argued that the argument that is being presented now, that any term in the 383 patent needs to have a specific construction, was waived below. Okay. But if you look in the board's decision, it's pages 16, 17, and 18 of the board's decision. For example, on page 17 of the board's decision, what they're talking about is the scope of the claim and whether it requires checking these different types of cells, the acceptability or suitability criteria with respect to these different types of cells. That's a claim scope issue, right? It's a claim scope issue, Your Honor, but it's not a claim construction issue. What's the difference? One is mapping the prior art to the claim. The other is defining the entire scope of the claim. Is it possible that what's going on here is that the board did actually do some form of claim construction? Maybe we'll call it implicit claim construction with respect to limitation 1C, the not suitable step, and that's what's going on at A18, A19. But at the same time, it didn't comment on the meaning of limitation 1B. And so, therefore, whatever your waiver argument was is overly broad because it was premised on no claim construction happening at the board level where, in fact, the board was commenting on and understanding a conception of the scope of 1C, but 1C alone. The board's analysis that you're flagging at A18 and A19 is the application of the prior art to that claim. I think the waiver argument stems out of the fact that in the institution decision, before the patent owner response went in, the board said the parties found no claim, or, yeah, the parties argued that no claims need to be construed. That happened based on CISL's argument and its preliminary response, excuse me, 3G licensing's argument and its preliminary response, which is effectively identical to the argument that it's raising now. And as a result of that interpretation of the claims, there was no additional claim construction positive or term identified that needed to have a specific meaning. And because of that, that's where the basis for our waiver argument comes from, is they had the opportunity to say, no, no, this is what the claim means, and this is the argument for that, and they never did that. Okay, but right on Appendix 18, the board says a patent owner contends that the claims explicitly require dot, dot, dot. The claims explicitly require something. And then the board says that that's not persuasive because it's not consonant with the language of the claims. Isn't that claim construction? No, I think this is the board rejecting the reading of words into the claim that are not part of the claim. So when a patent owner argued that... They're rejecting a narrative. That's claim construction. Well, what they were doing is saying the claims explicitly say this, or the claims explicitly require this, which is saying that the word appears in the claim. And the read of this passage of the final written decision is saying that that word is not part of the claim. The idea that this more in-depth... You don't think that's claim construction? I personally think that determining the scope of the claim is claim construction, right? I would agree that determining the scope of the claim is claim construction, yes. So we see this a lot of times on appeal where maybe there's no Markman formal claim construction. And then we have to ask ourselves, okay, what's going on in terms of application of a claim to the reference or the accused product? Is it purely a fact-finding question? Or is there somehow in the application some expression of a certain conception of a claim term that ends up being a claim construction, a de facto claim construction that then is getting applied to the accused product or the prior art reference? And so I think there's a very good argument that with respect to limitation 1C at A1819, that is in fact what happened here with the board expressing a certain conception of the not suitable limitation and then going forward and comparing that against TS 25304. So assuming that's right, then can you tell us why what the board said about the not suitable limitation, limitation 1C is correct? It's understanding of that claim limitation. So the board's analysis in the final written decision is correct because the board identified exactly the scope of the claim, excuse me, identified an instance within the scope of the claim that is also part of the prior art. So an analysis of a UE on one cell, looking at another cell, determining that that cell is barred and then not considering that cell falls within the scope of the claim as the board interpreted that claim. And so that analysis there is the proper read of the claims of the 383 path. So your argument, if I'm going to try restating it just to see if I understand it, is that regardless of the breadth of the claim construction, the board identified a piece of prior art that undisputedly falls within it, game over. Correct, Your Honor. Do you have anything further? One last point is Judge Chen was looking for an instance of an argument of claim element 1B and there is not. With that. I'm sorry, can you tell me what that last point is? I missed it. What was it? Judge Chen was looking for an instance of an argument about claim element 1B in the underlying proceeding by the patent owner and there was not one. Okay, and did you make that argument on appeal? We did not respond to that argument on appeal because that argument was never raised by a patent owner on appeal. Okay. Can I please report? So first you answered Judge Chen's question on page 28. We briefly discussed TS-45008. I'm sorry, what page? 28 through 29 and there we explained that TS-45008 does not teach the limitations for the same reason as TS-25304 because a different version of TS-25304 is incorporated because that specification incorporates by reference TS-25304. Sorry, I'm looking for 45.008. Yes, Your Honor. So at the very bottom of page 28 of our blue brief the last line starts with TS-45008. All right, and another reason we had to address both elements 1B and 1C on appeal. One of the reasons is that we had to address many other arguments that... many other conclusions of the board in the final written decision one of them being the antecedent basis. So it's the antecedent basis basically saying that cells that go through determination in 1C are different cells and go through element... through cells in 1B. So we had to go back and address limitation 1B for that reason as well. Now the antecedent basis is a red herring argument because we never argued that it's different cells that go through step 1B and 1C. The board seems to misunderstand that the numerosity of cells is not an issue. The claim is clear. It's one or more cells. What is at issue is the number of types of unsuitability for which our patent test for. And here we test it for any and all reasons so all types of unsuitability. Okay counsel your time has been expired for about 30 seconds so we're going to have to call this argument. I thank both counsels. This case is taken under submission.